UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>          Plaintiff, )<br>                        )<br>       v.                        )   Criminal Case No. 05-341-05 (RMU)<br>                        )<br>RAFAEL EDUARDO RUIZ-ALVEAR )<br>          a.k.a. "Rafael"      )<br>                        )<br>          Defendant.       )<br>_____) | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION
AND PROPOSED ORDER**

     The United States, by and through, Patrick H. Hearn, Trial Attorney, U.S. Department of Justice, Narcotics and Dangerous Drug Section, respectfully moves this court to order the pretrial detention of Rafael Eudardo Ruiz-Alvear, a.k.a. "Rafael" (Ruiz) pursuant to 18 U.S.C. § 3142(e). As set forth herein, there is a statutory presumption in favor of detention because the defendant is charged with, inter alia, Conspiracy to Manufacture and Distribute for the Purpose of Unlawful Importation Into the United States Five Kilograms or More of Cocaine, in violation of 21 U.S.C. § 959 and 960, which is an offense that carries a maximum penalty of more than ten years imprisonment. Moreover, the government believes that Ruiz has no ties to the United States; the government believes that Ruiz has the ability to flee and would flee if released from custody; and the government believes that Ruiz would pose a danger to the community unless he is detained.

**I.    Factual Background**

     Ruiz has been extradited to the United States based upon charges in this case which arise from evidence obtained during an investigation which revealed that Ruiz was a member of a

cocaine trafficking and transportation organization. Ruiz is currently in custody in Washington, D.C.

Ruiz is a member of a drug trafficking organization (DTO) which is known as the "El Patron" organization. The DTO operated in and around the North Coast of Colombia, South America trafficking in cocaine intended for transportation into the United States. The organization transported large loads of cocaine from cocaine laboratories in the Sierra Nevada Mountains of northern Colombia to the coastal areas of northern Colombia, then to Central America and Mexico and eventually destined for the United States.

The evidence against Ruiz consists of seizures of cocaine, surveillance, Colombian court-authorized intercepted telephone conversations in Colombia, and cooperating and/or government witnesses. The evidence from the investigation shows that from at least 2004 to the date of the indictment, that Ruiz and other members of the DTO continually transported hundreds of kilograms of cocaine, intended for transport to the United States, using "go fast" boats from locations in northern Colombia to transhipment points in Central America. From Central America the cocaine was transported to final destinations in the United States.

Each of the defendants named in the indictment, including Ruiz, has assisted in arranging logistical support, transportation and storage of cocaine, providing supplies for the "go-fast" boats, arranging for the receipt of cocaine by the organization or arranging for the delivery of the cocaine to other organizations. Upon arrival at these Central America destinations, the cocaine is received by other drug trafficking organizations and shipped to the United States. The "go-fast" vessels are specifically designed to hold more than nine hundred kilograms, or more, of cocaine at one time. Moreover, these boats are typically outfitted with two to four high performance outboard engines each, enabling the boats to travel long distances at relatively high speeds, even

when fully loaded. In various lawfully intercepted communications, members of the DTO discussed the "go-fast" operations, and/or financial transactions with other members of the DTO. Surveillance of the activities of the "El Patron" organization has confirmed the narcotics trafficking activities discussed by member of the DTO in the lawfully intercepted telephone conversations.

The investigation of the "El Patron" drug trafficking organization began in October 2004. From October 2004 through April 2005 judicially authorized telephone intercepts of the defendants and others revealed that the organization had sent out a number of vessels, loaded with cocaine, from the north coast of Colombia. None of those vessels were intercepted. During April 2005, the judicially authorized telephone intercepts of conversations revealed that the organization was preparing to send out one or more vessels, loaded with cocaine, from the north coast of Colombia. Additional, lawful telephone call intercepts revealed that the boats, loaded with cocaine, had left the north coast of Colombian on or around April 15, 2005. On April 16, 2005, the United States Coast Guard intercepted one of the boats loaded with cocaine. 2,340 kilograms of cocaine were found on board the boat and was seized by the United States Coast Guard. Subsequent to the seizure, lawfully intercepted telephone conversations revealed that the boat seized was a cocaine-laden boat sent out by the DTO on or about April 15, 2005.

Based on the lawful telephone intercepts and surveillance, the investigation has been able to identify each of the defendants and their role within the organization. The investigation, through the same lawful telephone intercepts and surveillance, has been able to verify the defendants named in this indictment were responsible for coordinating and sending the cocaine laden boat, which was seized by the United States Coast Guard on April 16, 2005.

The investigation has shown that Ruiz is responsible for assisting the head of the DTO

Vengoechea with running the "El Patron" organization. He assists with the logistics of the boats and cocaine shipments, he analyzes the locations of the Colombian and United States ships, and assists in coordination the activities of the "El Patron" organization members. Ruiz participated in several lawfully intercepted telephone calls with other defendants during which he discussed the departure and subsequent seizure of the cocaine laden boat by the United States Coast Guard on April 16, 2005

## II.    Legal Analysis

The federal bail statute authorizes a defendant's pretrial detention when no "condition or combination of conditions will reasonably assure the appearance of the person . . . and the safety of any other person and the community." 18 U.S.C. § 3142(e). The statute further provides that there is a rebuttable presumption that the defendant should be detained if there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 18 U.S.C. § 3142(e).

The existence of the indictment in this case establishes probable cause as a matter of law. See e.g., United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990). Moreover, the Government is permitted to proceed by proffer to establish other facts relevant to the bail decision. United States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

Several other factors in the detention statute also support the Government's request for pretrial detention. First the nature and circumstances of the offense are compelling. 18 U.S.C. § 3142(g)(1). Second, the weight of the evidence against the defendant is substantial. The evidence in this case consists of seizures of cocaine, go-fast boats transporting the cocaine on international waters, legally authorized Colombian wiretaps of the defendant discussing the cocaine seizure, surveillance of the defendant and co-conspirators and the testimony of

cooperating and/or government witnesses. 18 U.S.C. § 3142(g)(2). Third, the fact that the defendant is Colombian citizen with no known ties to the United States argues in favor of his detention pending trial. 18 U.S.C. § 3142(g)(3)(A). In fact, the defendant is here due to his legal extradition from Colombia. The defendant did not surrender to the United States government or come to the United States voluntarily. Several courts have ordered pretrial detention of foreign defendants without any contacts to the United States. E.g., United States v. Vargas, 804 F.2d 157 (1st Cir. 1986) (Chilean defendant in drug importation case who had no family ties to U.S. was properly detained when no conditions or combination of conditions would reasonably assure his appearance at trial); United States v. Geerts, 629 F.Supp. 830 (E.D. Pa. 1985) (defendant was citizen of Netherlands who faced possibility of approximately fifty years imprisonment on customs related charges and had no significant ties to United States; he thus presented a serious risk of flight which justified pretrial detention).

Finally, the defendant constitutes a clear and present danger to the community. The federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus, constitute a danger to the community. See United States v. Knight, 636 F.Supp. 1462 (S.D. Fla. 1986). Accord United States v. Creekmore, 1997 W.L. 732435 (D.D.C. 1997)(Facciola, J.).

### III.   Conclusion

For all of the foregoing reasons, the Government respectfully requests that the motion to detain the defendant without a bond pending trial be granted.

Dated: July 25, 2007

    Respectfully submitted

    KEN BLANCO, Chief
    Narcotics and Dangerous Drug Section

_____
Patrick H. Hearn
Trial Attorney
Narcotics and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 305-7606

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion and order was served on Joseph Virilio on this 25th day of July 2007.

/s/ _____
Patrick H. Hearn
Trial Attorney
U.S. Department of Justice